iC

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

F I L E D

FEB 02 2026 BI

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

DEMETRIUS WILLIAMS ,

)
)
)
)

**Plaintiff(s),**

)
)

vs.

)
)

CITY OF CHICAGO

)
)

_____ ,

)
)
)
)

**Defendant(s).**

)

1:26-cv-01143
Judge Charles P. Kocoras
Magistrate Judge Daniel P. McLaughlin
Random/Cat. 2

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* pro se *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

    laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.  Plaintiff's full name is  DEMETRIUS WILLIAMS                    .

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

4. Defendant, _CITY OF CHICAGO POLICE DEPT_, is
(name, badge number if known)

☑ an officer or official employed by _CITY OF CHICAGO_;
(department or agency of government)

_____ or

☐ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named
defendant and complete the information for each additional defendant on an extra sheet.*

5. The municipality, township or county under whose authority defendant officer or official

acted is _COOK_. As to plaintiff's federal

constitutional claims, the municipality, township or county is a defendant only if

custom or policy allegations are made at paragraph 7 below.

6. On or about _2-10-23_, at approximately _3:30_ ☐ a.m. ☑ p.m.
(month,day, year)
plaintiff was present in the municipality (or unincorporated area) of _____

_____, in the County of _COOK_,

State of Illinois, at _76 AND RACINE AV_,
(identify location as precisely as possible)

when defendant violated plaintiff's civil rights as follows *(Place X in each box that
applies)*:

☑ arrested or seized plaintiff without probable cause to believe that plaintiff had
committed, was committing or was about to commit a crime;
☑ searched plaintiff or his property without a warrant and without reasonable cause;
☑ used excessive force upon plaintiff;
☑ failed to intervene to protect plaintiff from violation of plaintiff's civil rights by
one or more other defendants;
☑ failed to provide plaintiff with needed medical care;
☑ conspired together to violate one or more of plaintiff's civil rights;
☐ Other: _____

_____

_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____.

7. Defendant officer or official acted pursuant to a custom or policy of defendant

   municipality, county or township, which custom or policy is the following: (**Leave blank**

   **if no custom or policy is alleged**): _STOP & FRISK_____

   _____

   _____

   _____.

8. Plaintiff was charged with one or more crimes, specifically:

   _RESISTING ARREST, OBSTUCTION of JUSTICE,_____

   _NO INSURANCE AND BEING DOUBLE PARLED_____

   _____

   _____

   _____

9. (**Place an X in the box that applies. If none applies, you may describe the criminal**
   **proceedings under "Other"**) The criminal proceedings

   ☐ are still pending.

   ☒ were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

   ☐ Plaintiff was found guilty of one or more charges because defendant deprived me of a

   fair trial as follows_____

   _____.

   ☐ Other: _____.

---

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent
may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the
conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

10.    Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

I WAS ILLEGALLY PULLED OVER BY OFFICERS RACIAL
PROFILING AND STEREOTYPING BECAUSE OF THE
CAR I WAS DRIVING AN THE NEIGHBORHOOD DEMOGRAPHICS.
WITH NO PROBABLE CAUSE DEFENDANTS PULLED OVER
MY VEHICAL WHILE I WAS DRIVING SOUTH BOUND ON
RACINE AV AND STATED I WAS DOUBLE PARKED. I SHOWED
HER MY LICENSE, WORK ID AND STATED I HAVE CAR
INSURANCE, THEN I REQUESTED FOR A SUPERIOR
OFFICER ON SCENE BECAUSE OF THE FALSE ACCUSATIONS
OF THE STOP. I WAS THEN THREATENED WITH VIOLENCE
FOR NOT LETTING MY WINDOWS DOWN OR OPENING MY DOOR.
AFTER SUPERIOR ARRIVED I WAS ASSULATED, FALSELY ARRESTED,
CONSPIRED AGAINST, HELD AGAINST MY OWN FREE WILL, AND UNJUSTLY
MISTREATED THE WHOLE TIME IN CUSTODY OF CPD.

11.    Defendant acted knowingly, intentionally, willfully and maliciously.

12.    As a result of defendant's conduct, plaintiff was injured as follows:

PAIN AND MENTAL ANGUISH, NECK AND BACK INJURIES,
CUTS TO MY WRIST AND TORTURED FOR HOURS WHILE
IN CUSTODY

13.    Plaintiff asks that the case be tried by a jury.    ☑ Yes    ☐ No

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

14. Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint.

**WHEREFORE,** plaintiff asks for the following relief:

A. Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by defendant;

B. ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages against the individual defendant; and

C. Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _Demetrius Williams_

Plaintiff's name *(print clearly or type)*: _DEMETRIUS WILLIAMS_

Plaintiff's mailing address: _80 E. 101 PL_

City _CHICAGO_     State _IL_     ZIP _60628_

Plaintiff's telephone number: (_630_) _509-8424_.

Plaintiff's email address *(if you prefer to be contacted by email)*: _____

_WILLIAMSDEMETRIUS27@YAHOO.com_

15. Plaintiff has previously filed a case in this district.  ☒ Yes  ☐ No

*If yes, please list the cases below.*
_2025L004218_

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff. An additional signature page may be added.*

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## Equitable Estoppel – 42 U.S.C. ₴ 1983

# I. INTRODUCTION

1. I the "Plaintiff" (Demetrius Williams) am seeking action for damages arising from the "Defendant", City of Chicago's ("the City"), willful and deceptive concealment of critical evidence—body-worn camera footage—in direct violation of its own publicly stated policies. The City's actions were a deliberate scheme to prevent the "Plaintiff" (Demetrius Williams) from timely filing a civil rights lawsuit, constituting equitable estoppel, and a clear breach of its contractual promises to its citizens.

# II. THE PARTIES

2. Plaintiff (Demetrius Williams) is an individual residing in (Chicago, IL).

3. Defendant: City of Chicago is a municipal corporation organized under the laws of the State of Illinois and is responsible for the policies, customs, and practices of the Chicago Police Department (CPD).

# III. JURISDICTION AND VENUE

4. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in Chicago, Illinois.

# IV. FACTUAL ALLEGATIONS

### The Underlying Incident and the Promise

6. On (February 10th, 2023), Plaintiff (Demetrius Williams) was subjected to an unlawful stop, racial profiling, excessive force, illegal search & seizure, malicious intent, and false arrest & imprisonment by officers of the Chicago Police Department.

7. At the time of the incident, the involved CPD officers were equipped with body-worn cameras that were activated and recorded the entire event.

8. The Defendant (The City) (CPD-FIOA), through its publicly available policies and statements on its official website, maintains a "Body-Worn Camera Program" which explicitly states that members of the public can request footage and will receive a response, including the availability of the video, within 5 to 10 business days.

9. In reasonable reliance on this public promise, Plaintiff (Demetrius Williams) submitted a formal request for the body-worn camera footage on (Date of Request by Attorney Garrett Browne April, 2023 and Plaintiff (Demetrius Williams) November 2024, and January 2025, which is well within the statute of limitations).

## The City's Bad Faith and Concealment

10. Despite its policy, the Defendant (The City) wrongfully and without justification withheld the footage. It ignored Plaintiff's (Demetrius Williams) requests and administrative appeals.

11. The Defendant (The City's) possession of the footage was exclusive, and Plaintiff (Demetrius Williams) had no other means to obtain it.

12. The Defendant (The City's) refusal to produce the footage was a deliberate tactic to conceal evidence of its officers' misconduct and to frustrate Plaintiff's (Demetrius Williams) ability to file a well-supported lawsuit.

13. Due to the Defendant (The City's) concealment of this essential evidence, Plaintiff (Demetrius Williams) was unable to file a lawsuit within the two-year statute of limitations for his underlying civil rights claims (which expired on February 10th, 2025).

   a. **<u>Case Name</u>** – Xihai Wang v. City of Indianapolis

   **<u>Factual Background</u>** – 24-2664 – 4/3/2025: Wang was arrested based on allegedly false statements by police. The officers withheld the body-camera video that would have shown the falsity of probable-cause affidavit. Wang did not obtain the video until more than a year after his arrest and after the statute of limitations had arguably run.

   **<u>Key Facts</u>** – Equitable Estopped Ruling: The Seventh Circuit explicitly held that the officers' **<u>withholding of the body-camera video justified equitable estoppel.</u>** The court stated that **<u>"equitable estoppel tolls the statue of limitations when a defendant takes active steps to prevent the plaintiff from suing in time".</u>**

   b. **<u>Case Name</u>** – Jerry Amaro v. City of Oakland

   **<u>Factual Background</u>** – 10-16152 – After Jerry Amaro died from injuries sustained during an arrest, the Oakland Police Department withheld evidence of the beating and lied to his family about how his death took place.

   **<u>Key Facts</u>** – Equitable Estoppel Ruling: The Ninth Circuit held that the defendants were equitable estopped from asserting the two-year statute of limitations. The court emphasized that the police had engaged in misrepresentations and stonewalling that deliberately prevented the plaintiff family from learning that they had a viable claim.

   **<u>The district court's denial of the defendants' motion to dismiss was affirmed, allowing the plaintiff's case to proceed on the merits</u>**.

## The Court-Ordered Disclosure and Prejudice

14. Only after the Plaintiff (Demetrius Williams) filed a separate petition in the Circuit Court of Cook County, and Judge (Thomas More Donnelly) issued a direct order, did the City finally produce the body-worn camera footage (Released on July 1st, 2025) which was after the statute of limitations had already expired.

15. The produced footage conclusively shows the underlying constitutional violations, including the lack of probable cause, unlawful stop, racial profiling, excessive force, illegal search & seizure, malicious intent, and false arrest & imprisonment.

16. The City's actions have directly and severely prejudiced the Plaintiff (Demetrius Williams) by causing the time-bar of his primary civil rights claims. The City is now attempting to use a limitations period that its own misconduct created.

## V. CAUSES OF ACTION

### COUNT I
### (Equitable Estoppel - 42 U.S.C. § 1983) See Exhibit 1,2,& 3

17. Plaintiff (Demetrius Williams) re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

18. The Defendant (The City), through its conduct and published policy, made a material misrepresentation (the promise to provide footage in 5-10 days) upon which the Plaintiff (Demetrius Williams) reasonably relied.

19. The Plaintiff's (Demetrius Williams) reliance was reasonable and in good faith.

20. The Defendant (The City) intentionally concealed the footage with knowledge of its importance, thereby preventing the Plaintiff (Demetrius Williams) from filing his lawsuit within the statutory period.

21. As a direct and proximate result of the Defendant's (The City) concealment and the Plaintiff's (Demetrius Williams) reasonable reliance, the Plaintiff (Demetrius Williams) has been induced to allow the filing deadline to pass and is now barred from pursuing his underlying civil rights claims, causing significant legal prejudice.

22. The Defendant (The City) should be equitably estopped from raising the statute of limitations as a defense, and the Plaintiff (Demetrius Williams) should be permitted to pursue his claims as if they were timely filed.

## COUNT II
## (Breach of Contract - State Law Claim)  See Exhibit 1

23. Plaintiff (Demetrius Williams) re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

24. The City's published Body-Worn Camera Program, which promises to provide requested footage within 5 to 10 business days, constitutes a valid and enforceable unilateral offer.

25. Plaintiff (Demetrius Williams) accepted this offer by performing the required action of submitting a formal request for the footage, thereby forming a binding contract.

26. Defendant (The City) materially breached this contract by failing to provide the footage within the promised timeframe, or at all, until compelled by a court order long after the deadline.

27. As a direct and foreseeable result of this breach, Plaintiff (Demetrius Williams) suffered damages, including the loss of his ability to timely file his underlying civil rights lawsuit, and has incurred costs and attorneys' fees in compelling the City to comply with its own policy.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff (**Demetrius Williams**) respectfully requests that this Court enter judgment against the Defendant City of Chicago, as follows:

a. On Count I (**Equitable Estoppel**): An order estopping the Defendant (The City) from raising the statute of limitations as a defense to Plaintiff's (Demetrius Williams) underlying civil rights claims, and allowing Plaintiff (Demetrius Williams) to proceed on the merits of those claims;

b. On Count II (**Breach of Contract**): Awarding compensatory damages for the harm caused by the breach;

c. Awarding Plaintiff (Demetrius Williams) his costs, expenses, and reasonable attorneys' fees incurred in this action; and

d. Granting such other and further relief as the Court deems just and proper.

# PARTIES, JURISDICTION, AND VENUE

1. Plaintiff (Demetrius Williams) is now, and at all times relevant to this complaint was, in Illinois, a resident of the City of Chicago, Cook County.

2. Defendant City of Chicago (The City) is a municipal corporation formed in and existing within the State of (Illinois), located in Cook County, and at all times relevant to this complaint, Defendant City of Chicago (The City) employed Defendants Chicago Police Officers (R. S. Collins), (B. R. Walker), (Officer Gonzalez), (Officer Adams), (SGT Brown), (R. C. Doherty) and other Chicago Police Officers referred to in the caption to this complaint.

3. Defendant (The City) (Officer R.S. Collins – 16180) is now, and at all times relevant to this complaint was, a police officer of the City of Chicago Police Department in the State of Illinois.

4. Defendant (The City) (Officer B.R. Walker – 5753) is now, and at all times relevant to this complaint was, a police officer of the City of Chicago Police Department in the State of Illinois.

5. Defendant (The City) (Officer Gonzalez) is now, and at all times relevant to this complaint was, a police officer of the City of Chicago Police Department in the State of Illinois.

6. Defendant (The City) (Officer Adams) is now, and at all times relevant to this complaint was, a police officer of the City of Chicago Police Department in the State of Illinois.

7. Defendant (The City) (Sgt Brown – 1392) is now, and at all times relevant to this complaint was, a police officer of the City of Chicago Police Department in the State of Illinois.

8. Defendant (The City) (Officer R.C. Doherty – 459) is now, and at all times relevant to this complaint was, a police officer of the City of Chicago Police Department in the State of Illinois.

9. Defendant County of Cook is a municipal corporation formed in and existing within the State of Illinois, and at all times relevant to this complaint, Defendant County of Cook may have employed certain police officers who are the subject of this complaint.

10. Defendant Cook County Sheriff's Office is a subdivision and/or department of Defendant County of Cook, and employed certain police officers who are referred to in this complaint.

11. Defendant State of Illinois, employed certain police officers, whose names and identities are unknown to plaintiff at this time, which is referred to in this complaint.

12. Each of the individually named defendants is sued individually and in their official capacities.

13. Each of the individually named defendants was at all times relevant acting under color of state law and on behalf of the I name of Defendant the City of Chicago, Illinois/Chicago Police Department, and Cook County Sheriff's Office.

14. This action is brought pursuant to 42 U.S.C.A. §§ 1983, 1988 jurisdiction is found upon 28 U.S.C.A. §§ 1331, 1343. Pendant and supplemental jurisdiction is invoked for this court to decide claims that may arise under state law.

15. Venue is properly brought in the name of District 1 of Illinois pursuant to 28 U.S.C.A. § 1391(b).

16. Plaintiff timely filed a Notice of Claim with Defendant City of Chicago, Defendant State of Illinois, and Defendant County of Cook pursuant to the tort claims act of the State of Illinois. More than thirty days have elapsed since the filing of such Notices of Claim, which have not been compromised or settled by defendants.

## Factual Allegations

17. On February 10th, 2023, at approximately 3:30 pm, Plaintiff (Demetrius Williams) and passenger Dominique White was driving East Bound on West 73rd Place in a (White 2017 Infiniti Qx60 SUV). While approaching the stop sign, Plaintiff (Demetrius Williams), properly stop and preceded to turn right going South Bound on Racine Street which was a complete opposite direction of the Defendants (The City) (CPD) officers who allegedly reported to other Defendants (The City) (CPD) officers.

18. After Plaintiff (Demetrius Williams) completed the turn and continuing South Bound on Racine Street, Plaintiff (Demetrius Williams) made eye contact with a Dark Color/Grey unmarked Police Squad Car parked to Plaintiff (Demetrius Williams) left hand side of the street. The unmarked Police car in question was driven and operated by Defendant (The City) (CPD) (Officer Collins) (**completely opposite of police report event #2304109162) Ex. 2 (The City)**

19. Plaintiff (Demetrius Williams) continued to precede south bound on Racine Street with the intention of going home to rest. After the Plaintiff (Demetrius Williams) began to cross the 76th & Racine intersection, the unmarked Police Squad Car that was carrying 4 Defendants (The City) (CPD) (Collins) (Adams) (Gonzalez) (Walker) activated the siren and lights to initiate the traffic stop.

18. After I, Plaintiff (Demetrius Williams) realized that I was the intended person in question: I Plaintiff (Demetrius Williams) without hesitation pulled my vehicle over to the parking lane located at 7616 S. Racine Street per the given address in the police report.

19. The Defendants (The City) (CPD) (Officer Collins) approached the driver side window of the Plaintiff (Demetrius Williams) (QX 60 White Infiniti SUV) while witness Dominique White on the passenger side of vehicle in question to initiate an absent probable cause investigation.

20. Defendant (The City) (CPD/Officer Collins) approached vehicle in question (Infiniti QX60) ordering all windows to be lowered, initiating a warrantless no probable cause grossly unreasonable investigation on the Plaintiff (Demetrius Williams) with asking for his driver's license and proof of insurance.

21. The Defendant (The City) (CPD) (Officer Collins) began to request information from me Plaintiff (Demetrius Williams) such as Driver's License, Proof of Insurance to which I Plaintiff (Demetrius Williams) had both documents eliminating any reason for unwarranted searching of myself or vehicle. The Defendant (The City) (CPD Officer Collins) stated that she wanted the Plaintiff (Demetrius Williams) license to which was placed to the window of the vehicle in question (Infiniti QX60) along with my City of Chicago work ID and asked her to write the information down since she insisted on stopping Plaintiff (Demetrius Williams) for no probable cause. After questioning the reason for the stop, the Defendant (The City) (CPD) officer stated that the traffic stop was for being double parked at 1221 West 73rd Place.

22. After the Defendant (The City) (CPD) (Officer Collins) refused to write down Plaintiff (Demetrius Williams) information, I Plaintiff (Demetrius Williams) requested to have a supervisor officer present to help resolve the mounting issues that were taking place. I the Plaintiff (Demetrius Williams) was witnessing the violations of my constitutional rights before the Defendants (The City) (CPD) (SGT Brown) became respondent supervisor on scene.

23. After the Defendant (The City) (CPD) (Officer Collins) retreated to their unmarked squad car, the Defendant (The City) (CPD) (Officer Adams) started his grossly unreasonable investigation ordering Plaintiff (Demetrius Williams) to lower his window down. Upon the Defendant (The City) (CPD) (Office Adams) stating three times to lower the window, the Plaintiff (Demetrius Williams) while exercising his rights to remain silent while on the phone with a 911 operator began to fear for his life when Defendant (The City) (CPD) (Officer Adams) intentionally with a malicious intent threatening to break the vehicle window.

24. From accusations and appearance of a mask concealing the Defendant (The City) (CPD) (Officer Adams) face, he began threating Plaintiff (Demetrius Williams) with acts of malice and violence. Because the Plaintiff (Demetrius Williams) refused to lower the car windows, proceeded to contact 911 a second time, and requested a Supervisor due to the fear of imminent danger for the Plaintiff (Demetrius Williams) and passenger Dominique White. With there being no probable cause, any use of excessive force is battery.

25. After multiple calls to the 911 seeking assistance because I the Plaintiff (Demetrius Williams) began to fear for my life due to the Defendant (The City) (CPD) officers having had no reason, purpose or jurisdiction to have any contact with the Plaintiff (Demetrius Williams) while under this grossly unreasonable investigation. Not too long after waiting Defendant (The City) (CPD) (SGT Brown #1392) entered the scene and announced himself then proceeded.

26. The Defendant (The City) (CPD) (SGT Brown #1392) begin his illegal grossly unreasonable investigation by asking the Plaintiff (Demetrius Williams) what was happening and asking standard questions such as if there were any drugs or weapons in the vehicle with requesting license and insurance with no probable cause. Plaintiff (Demetrius Williams) presented his license and insurance to eliminate and illegal search and seizure under the Illinois law.

27. After Plaintiff (Demetrius Williams) produced his legal license and proof of insurance for a minor traffic citation, Defendant (The City) (CPD) (SGT Brown #1392) was not satisfied since nothing was found in the car. The illegal grossly unreasonable investigation continued while the Plaintiff (Demetrius Williams) was surrounded and interrogated and told that the vehicle smelled like burnt cannabis, (which was not true) and not a legal reason for an unlawful search or seize of a vehicle. Also, the claim of not lowering the vehicle windows does not permit a reason for an unlawful search and seize of a vehicle.

28. The Plaintiff (Demetrius Williams) did not lower the vehicle windows because of the clear and present danger of the Defendants (The City) (CPD) Officers Respondent Supervisor on the scene Defendant (The City) (CPD) (SGT Brown #1392) who is conducting an illegal grossly unreasonable investigation is now conducting an illegal search and seizure and ordering the Plaintiff (Demetrius Williams) out of his vehicle for a narcotic search, absent probable cause permissioned or reason while denying Plaintiff (Demetrius Williams) the ability to receive a minor traffic citation if one was to be given. By reframing the Plaintiff (Demetrius Williams) from continuing his business by use of this unlawful search and seizure.

29. Upon exiting the vehicle in question, while still being 100% compliant to the Defendant (The City) (CPD) (SGT Brown #1392) and thinking that I Plaintiff (Demetrius Williams) was safe to exit vehicle following Defendant (The City)

(SGT Brown) orders, then Defendant (The City) (CPD) (Gonzalez), (Adams) and (SGT Brown) officers immediately begin using illegal arm bar techniques to arrest Plaintiff (Demetrius Williams).

30. While conducting a warrantless, no probable cause, illegal reckless unreasonable investigation, against Plaintiff (Demetrius Williams) initiating and clearly using excessive force and battery to false arrest then imprison the Plaintiff (Demetrius Williams) to gratify their intentions, they used acts of malice against the Plaintiff (Demetrius Williams) for not lowering the windows of his vehicle, refusing to exit the vehicle, and requesting a superior officer before Defendant (The City) (CPD) SGT Brown entered the scene at 76th South Racine Officers.

31. After walking Plaintiff (Demetrius Williams) to the rear of vehicle in question (Infiniti QX60), the Plaintiff (Demetrius Williams) is still complying with actions and orders of the Defendants (The City) (CPD Officers) while they are continuing to conduct an illegal search of Plaintiff (Demetrius Williams) vehicle in question. (Infiniti QX 60) Please pardon the use of language I Plaintiff (Demetrius Williams) used while exercising my 1st amendment rights, began telling Defendants (The City) (CPD) Officers what and how they should be doing their job correctly to serve the citizens of the City of Chicago. Also sarcastically teasing Defendants (The City) (CPD Officer Collins) because the Plaintiff (Demetrius Williams) felt since Collins was the driver of the unmarked squad car and initiated the whole debacle of egregious acts taken to violate the Plaintiff (Demetrius Williams) constitution rights, while Plaintiff (Demetrius Williams) was still showing compliance of all actions taken by the Defendants (The City) (CPD) Officers.

32. After not accomplishing anything in the unlawful search and seizure that had been committed, the Defendants (The City) (CPD) were unsatisfied with the search, but decided out of malice intent for Plaintiff (Demetrius Williams) actions of speaking to the Defendants (The City) (CPD) called for additional assistance to detain Plaintiff (Demetrius Williams) even longer and went in his phone an deleted video of the beginning of Plaintiff exiting the video. As Defendants (The City) (CPD) officers falsified documents such as proclaiming probable cause, double parked, no insurance, resisting arrest, obstruction of justice, in which these actions were intentional in false-hood.

33. Upon disclosing multiple times that vehicle in question (Infiniti Qx60) Plaintiff (Demetrius Williams) did have insurance as of 2/10/23 to present. The Defendants (The City) (CPD) proceeded to escort Plaintiff (Demetrius Williams) to the assisting vehicle but did not read Plaintiff (Demetrius Williams) his Miranda Rights and refused to announce why they were placing the Plaintiff (Demetrius Williams) into the Defendants (The City) (CPD) Officers custody. The Defendants (The City) (SGT Brown) officer repeatedly announced that Plaintiff (Demetrius Williams) was not under arrest at any given point up until this moment **ensued.**

34. As The Defendants (The City) (CPD) (Unknown) Officers of the just arriving marked squad car, began his unlawful search of Plaintiff (Demetrius Williams) person using excessive force to search. The Plaintiff (Demetrius Williams) was aggressively pushed and forced into the back seat of the Defendant (The City) (CPD) marked squad car, completely ignoring Plaintiff (Demetrius Williams) stating that the Defendant (The City) (CPD Officer) was hurting him by forcing him into the back seat of the vehicle even asking him to just put his hands in front of him. Plaintiff (Demetrius Williams) wanted his hands in front of him in an attempt to ease the severe pain that he was experiencing. While using his feet to push himself into the vehicle of the Defendant (The City) (CPD) (Unknown) officer, out of malicious intent attempted to put the seatbelt across Plaintiff (Demetrius Williams) neck, parading it as an attempt to apply the seatbelt on Plaintiff (Demetrius Williams) who was not in the vehicle at that point and nor were his feet secured in the marked squad car of Defendant (The City) (CPD) (Unknown) officers.

35. After the Plaintiff (Demetrius Williams) was forcefully put in the back of a marked squad car, he made it known to the Officer driving that he was hurt. The Plaintiff (Demetrius Williams) back was injured and he needed to go to the hospital due to the extreme pain that he was experiencing. After being transported to the Police Station at 79th Halsted Street, Officers ordered Plaintiff (Demetrius Williams) out of the car. The Plaintiff (Demetrius Williams) asked for help due to the position he was placed in when forced in the back seat of the Defendant (The City) (CPD) (Unknown) Officer marked squad car.

36. After Plaintiff (Demetrius Williams) had repeatedly said that the Defendant (The City) (CPD) officers were not accurate on February 10th, 2023, for probable cause, no insurance or any citation given. No one would check Plaintiff (Demetrius Williams) statement or use due diligence to even look into accusations of Fellow Officers under the "code of silence" after questions had arose from Plaintiff Demetrius Williams. While Plaintiff (Demetrius Williams) repeatedly stated he was going to take action against the disrespectful, overly aggressive treatment and blatant violation of his constitutional rights. Then Defendant (The City) (CPD) Officers handcuffed Plaintiff (Demetrius Williams) to a pole in a holding cell while he waited for the paramedics to arrive.

37. After arriving to the 79th Halsted Police Station, two female Defendants (The City) (Paramedics) began questioning Plaintiff (Demetrius Williams) about his condition and discussing the injury sights were bruising and bleeding on Plaintiff (Demetrius Williams) wrists.  The Defendants (The City) (Paramedics) also listed the Plaintiff (Demetrius Williams) complaints of severe neck and back pain.

38. Plaintiff (Demetrius Williams) was then strapped to a Gurnee style chair where he complained of more pain as Defendant (The City) (Paramedics) transported the Plaintiff (Demetrius Williams) out the police station to back of ambulance where the Defendant (The City) (Paramedics) continued to use techniques and methods that put Plaintiff (Demetrius Williams) in more pain than previously spoken about and continued to complained of severe pain. Out of frustrations due to everyone not listening to his complaints Plaintiff (Demetrius Williams) constantly told Defendant (The City) (Paramedics) of pain they still used excessive force when handling the Plaintiff (Demetrius Williams) which included dropping the Plaintiff on the floor of the Ambulance twice.

39. After transporting Plaintiff (Demetrius Williams) to Saint Bernard Hospital for treatment which did not get any better, the Plaintiff (Demetrius Williams) was left in the room for hours before any nurse or doctor act as though a patient was in the room. While in the room with two other inmates, the Plaintiff (Demetrius Williams) began pacing trying to sooth the pain that was attacking his spine. After receiving no comfort, the Plaintiff (Demetrius Williams) squatted to see if the pain would ease up but was not able to get any relief and not able to return to the standing position. The Defendant (The City) (CPD) Officers who witness

that I was not able to stand refused to assist me with standing causing an inmate to help me back to the standing position. When a nurse finally comes, her and another detained individual passed words. He threw his shoe at her out of frustration and now the nurse is cursing and having words for the entire room to hear and how disrespected she felt from her previous contact with said unknown individual. Upon leaving the room and returning, the nurse then asked if Plaintiff (Demetrius Williams) with this unknown substance she had in a needle "in your ass or arm". The Plaintiff (Demetrius Williams) stated "I never received a COVID injection, so what makes you think I am going to let you shoot me something that is unknown? Plaintiff (Demetrius Williams) repeatedly asked for pain pills and was told that there were no pain pills in the hospital, and nurse left the room.

40. While continuing to suffer with extreme pain for thirty minutes or so, a doctor finally came in to speak I Plaintiff (Demetrius Williams) along with two other in custody patients. He then wrote a prescription for Motrin and stated that my discharge papers would be coming soon. I Plaintiff (Demetrius Williams) tried to explain to the doctor that I was in severe pain and that I need him to please help me. The Physician did not respond and left the room without any comments.

41. I Plaintiff (Demetrius Williams) was transported back to the 79th Halsted Police Station where Plaintiff (Demetrius Williams) was then finger printed and the Defendant (The City) (CPD) (Unknown) officer began small talk and stated "when you file your law suit, do not include our name". We are just trying to get you out of here, and I was placed in a holding cell. While in the wake of all of these events are taking place, there is a Defendant (The City) (CPD) (Unknown) officer had answered the Plaintiff (Demetrius Williams) cell phone twice. Defendant (The City) (CPD) (Unknown) officer answered a call from Plaintiff (Demetrius Williams) God Mom and friend close Aaron Edwards. During the conversation, Defendant (The City) (CPD) (Unknown) officer asked both if I the Plaintiff (Demetrius Williams) sold drugs. Both callers were very upset did not feel comfortable with the questions that were asked.

42. The Plaintiff (Demetrius Williams) was intentionally out of malice, placed in a holding cell with urine, feces and vomit on the floor. The cell smelled horrible which is when a Defendant (The City) (CPD) (Unknown) White Shirt and a guy

with a camera came and opened the cell. Because of this horrible odor and unsanitary conditions the camera guy refused to enter and take pictures of the Plaintiff (Demetrius Williams) injuries. Since the photos were needed, the guy attempted to take some photos while standing in the hall way of door way of the cell.

43. Plaintiff (Demetrius Williams) then stated to the Defendant (The City) (CPD) (Unknown) white shirt that he I was not doubled parked and have insurance on his vehicle. Again, the Defendant (The City) (CPD) (Unknown) white shirt, a respondent supervisor was not listening to what the Plaintiff (Demetrius Williams) said and did not attempt to do his due diligence to investigate the matter, with making a statement that he believes what his officers were saying and did to transpire all the events of 2/10/2023 was correct. The Defendant (The City) (CPD) (Unknown) officer then ordered the Plaintiff (Demetrius Williams) back into the cell while still suffering with severe pain and trying to tolerate the horrible smell of waste (urine, feces and vomit) on the floor of the cell.

44. In the cell for more hours suffering and in pain, from being tormented by the Defendants (The City) (CPD) officers, and with the burning and throbbing sensation of the entire spine due to the lack of own personal medication, medical treatment that was not given at Saint Bernard Hospital, the Plaintiff (Demetrius Williams) decided to remove his t-shirt and wet it with cold water and placed the shirt on his spine from his neck to the low back with leaning against the wall hoping for some relief.

45. After being in the holding cell for hours then being released out of the cell, The Plaintiff (Demetrius Williams) could hardly walk from the cell to the front of the Police Station to make a call for his brother, Jamar Ector, asking for a pick-up. After Plaintiff (Demetrius Williams) spoke to his Brother, Jamar Ector, and he agreed to pick-up Plaintiff (Demetrius Williams) from police station. Plaintiff (Demetrius Williams) noticed that sum of his property was missing which was a diamond watch and his City of Chicago work ID. The Defendant (The City) (CPD) (Unknown) officer stated that the watch was getting sent to evidence holding on 1011 S. Homan and that they didn't see or have Plaintiff (Demetrius Williams) City of Chicago work ID. The Plaintiff (Demetrius Williams) missing work ID was a

last act of malice to inconvenience Plaintiff (Demetrius Williams) on behalf of the Defendant (The City) (CPD) officers

46. When Jamar Ector arrived to the police station to pick up Plaintiff (Demetrius Williams), not realizing the severity of the situation, he instantly became distraught and began to experience flash-backs to prior years. Once he saw Plaintiff (Demetrius Williams) trying to walk to the car, Jamar Ector remembered when the police had open up gun fire, battered, and kicked Plaintiff (Demetrius Williams) in the groin, which is trauma that he suffers from to this present time. Jamar Ector immediately got out the car grab Plaintiff arm over his shoulder helping him into the car then proceeding to take him to Little Company of Mary Hospital because Plaintiff (Demetrius Williams) repeatedly stated to him that he needed medical attention.

47. After arriving at Little Company of Mary Hospital the Plaintiff (Demetrius Williams) was immediately seen and admitted by nurses. After questioning about his condition Plaintiff (Demetrius Williams) was given an X-ray. After determining nothing was broken, they then gave pain meds to Plaintiff (Demetrius Williams) and allowed him to rest because of the traumatic circumstances that the Plaintiff (Demetrius Williams) had experienced the prior day, by the Defendant (The City) (CPD) officers.

# CAUSES OF ACTION

## COUNT I: UNLAWFUL STOP, DETENTION, INTERROGATION, SEIZURE, FALSE IMPRIONSONMENT, AND UNLAWFUL ARREST (4TH Amendment, § 1983)

1. Plaintiff Demetrius Williams was stopped in his motor vehicle, detained, and interrogated without cause and vehicle was then illegally searched. There was no reasonable suspicion or probable cause or lawful basis for Plaintiff's Demetrius Williams stop, detention, interrogation or the search of Plaintiff's vehicle.

2. Defendants' (The City) (CPD) Officers actions constituted a violation of the Plaintiff's Demetrius Williams Fourth Amendment rights under 42 U.S.C.A. § 1983. The Fourth Amendments protects against unreasonable seizures. An arrest without probable cause is unconstitutional.

3. The Defendant (The City) (CPD) Officers seized, detained, and arrested Plaintiff Demetrius Williams without a warrant, without probable cause, and without any legal justification. Every minute of Plaintiff's Demetrius Williams detention following this illegal seizure constitutes **false imprisonment**. The (CPD) officers' **malicious intent** is evidenced by their decision to proceed with an arrest they know was baseless.

4. The Defendant (The City) (CPD) had no probable cause to stop, detain, interrogate, seize Plaintiff's vehicle or to pursue unlawful arrest along with false imprisonment. Here are notable cases where the Plaintiff sued a city for false arrest arguing there was no probable cause.

a. **Case Name** - Sital v. City of New York
**Citation** – 2009 NY – 071716
**Key Facts** – Plaintiff was arrested based solely on an identified citizen's accusation that the investigating officer doubted. The jury found no probable cause.

b. **Case Name** – Williams v. City of Detroit
**Citation** – ACLU Settlement (2024)
**Key Facts** – Detroit police wrongfully arrested Robert Williams after a false facial-recognition match. The warrant application omitted critical reliability issues leading to an arrest without probable cause. This case resulted in policy changes for Detroit Police use of facial recognition technology.

c. **Case Name** – Ashanti v. City of New York
**Citation** – 2023 NY 50032
**Key Facts** – An attorney was arrested for obstruction, harassment, and resisting arrest after a dispute with police. The court found disputed issues of fact as to whether probable cause existed. The case was allowed to proceed to trial because the motion for summary judgment was denied.

## COUNT II: EXCESSIVE FORCE AND INADEQUIATE TRAINING, SUPERVISION, A DISCIPLINE (4TH Amendment, § 1983)

1. Defendants (The City) (CPD) Officers failed to train, supervise and discipline police officers including the individually named and Unknown Officer in Lawsuit.

2. The use of force must be objectively reasonable under the circumstances. The force used by the Defendant (The City) (CPD) Officers was grossly disproportionate to any perceived threat, as Plaintiff was compliant and posed no danger. This **excessive force**

was applied maliciously and sadistically to cause harm not to effect a lawful arrest.

3. The deficiency in training, supervision and disciplining of Defendant (The City) (CPD) Police Officers was an actual cause of the constitutional rights and represents a deliberate indifference on the Defendants(The City) (CPD) Officers part. As a result of the Defendants' (The City) (CPD) Officers negligence, the Plaintiff Demetrius Williams was subjected to injury confinement and deprived of his freedom and personal property.

4. The Defendant (The City) (CPD) forced the Plaintiff into the side of his vehicle while applying illegal arm bar holds. The Defendant also showed excessive force by forcefully shoving the Plaintiff into the back seat of a squad car and applying the seat belt around the Plaintiff's neck.

a. **Case Name** – Kerr v. City of West Palm Beach
   **Citation** – 875 F.2d 1546 (1989)
   **Key Facts** – Plaintiffs were bitten by police dogs doing apprehensions. The jury found the city and its former police chief liable for inadequately training and supervising the canine unit which led to excessive force.

b. **Case Name** – 10th Circuit Verdict against Denver
   **Citation** – Reported in Colorado Politics (2023)
   **Key Facts** – A jury awarded $2.4 million against the City for excessive force based in part of inadequate training.

c. **Case Name** – Sharon Beck v City
   **Citation** – Unpublished Opinion (ca5.uscourts.gov)
   **Key Facts** – The jury found the city liable for unconstitutional excessive force caused by its inadequate training policy.

## COUNT III: RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHTS AND ACTION AGAINST DEFENDANTS FOR INTENTIONAL INFLICTION OF DISTRESS (1ST Amendment, § 1983)

1. With the violation of constitutional rights, all damages and penalties recoverable under 42 U.S.C.A. § 1983 and 1988 and as allowed under the State of Illinois and United States Statutes, Codes, and Common Law.

2. Plaintiff Demetrius Williams filed a claim within a timely manner against the Defendant City of Chicago in the State of Illinois.

3. The First Amendment protects the right to criticize government officials, including police officers, and to question their authority.

4. Plaintiff's Demetrius Williams arrest and the subsequent **excessive force** were motivated, at least in part, by Plaintiff's Demetrius Williams protected speech-namely, questioning the basis for the detention.

5. The Plaintiff voiced his opinion to the Officers on how their job should be done along with stating that the traffic stop was wrong, caused the Officers to concoct a plan for retaliation. Also the lying concerning the traffic stop along with falsifying the reports, did not match the video that the Plaintiff received from the City of Chicago Police Department.

a. **Case Name** – Gonzalez v. Trevino
   **Citation** – 144 S. Ct. 1663 (2004)
   **Key Facts** – A city council member was arrested for mishandling a petition after she criticized the city manager. The Supreme Court vacated the Fifth Circuit's dismissal and remanded reviving the claim.

b. **Case Name** – Villarreal v. City of Laredo

**Citation** – 44F.4[th] 363 (5th Cir. 2022) remanded (2024)

**Key Facts** – A citizen journalist was arrested for asking a police officer a question. The Supreme Court ruled for the plaintiff.

c. **Case Name** – LaMont Lockhart v. Village of Woodmere

**Citation** – Chandra Law Firm summary

**Key Facts** – A former police chief alleged retaliation after blowing the whistle on race discrimination. The Jury verdict of $2,000,750 was followed by a $1.4 million settlement.

## COUNT IV: FABRICATION OF EVIDENCE & MALICIOUS PROSECUTION (4th & 14th Amendment, § 1983)

6. Plaintiff Demetrius Williams has the right to be free from unreasonable searches and seizures and have equal protection of the laws as secured by the 4th and 14th Amendments of the constitution. Plaintiff Demetrius Williams, constituting **malicious prosecution.**

7. The conduct of the Defendants (The City) (CPD) Officers entitles the Plaintiff Demetrius Williams to punitive damages and penalties allowed under 42 U.S.C.A. §§ 1988.

8. The Police fabricated the evidence by writing tickets for no insurance, double parking, resisting arrest and obstruction of justice. The malicious prosecution included being held in jail and fabricating all of the above charges.

a. **Case Name** – Thompson v. Clark (2022)

**Citation** – None

**Key Facts** – The police cannot use the fact that they had probable cause for a minor charge to prevent liability for more serious fabricated charges.

    b. **<u>Case Name</u>** – Chiaverini v. City of Napoleon, Ohio (2024)
       **<u>Citation</u>** – None
       **<u>Key Facts</u>** – This case protects freedom of speech. It held that even if police had probable cause for an arrest, a Plaintiff can sue for retaliation if shown that other who engaged in the same conduct was not arrested.

    c. **<u>Case Name</u>** – Gonzalez v. Trevino (2024)
       **<u>Citation</u>** – None
       **<u>Key Facts</u>** – This case protects free speech that is held even if the police had probable cause for an arrest. A Plaintiff can sue for retaliation if they can show that others engaged in the same conduct but not the same protected speech.

## COUNT V: RACIAL PROFILING AND VIOLATION OF 42 U.S.C.A. § 1983 SUPERVISORY AND MUNICIPAL LIABILITY (4th & 14TH Amendments, § 1983)

9. Plaintiff Demetrius Williams believes that using and tolerating excessive or unjustified force, unreasonable seizures, and racial profiling based on a person's race occurs because of failed training

10. To fail to institute, require or enforce proper/adequate training can lead to more illegal stops or racial profiling.

11. The Equal Protection Clause of the Fourteenth Amendment prohibits selective enforcement of the law based on race.

12. The initial **<u>illegal stop</u>** was a direct result of the CPD's official custom and practice of **<u>racial profiling</u>** and "stop and frisk" targeting minorities. The officers' actions were based on Plaintiff's Demetrius Williams race rather than any evidence of wrongdoing.

13. Due to the demographics of the neighborhood and with the Plaintiff being a Black man with a nice vehicle, the Police automatically assumed that a gun and drugs were in the vehicle.
    a. Case Name – Family of George Floyd v. City of Minneapolis

Nature of Win – One of the largest civil rights settlements in U.S. history, stemming from a high-profile case of racial bias policing.

Key Outcome – Settlement requiring police policy changes with $27 million pre-trial settlement.

b. **Case Name** – Randy Cox v. City of New Haven, Connecticut

**Nature of Win** – Reported as a record settlement in a police misconduct case involving a Black man left paralyzed after arrest.

**Key Outcome** – $45 million settlement

c. **Case Name** –Winston v. Salt Lake City Police Department

**Nature of Win** – The settlement mandated changes to how the police and school districts treat student of color which is a significant non-monetary victory.

**Key Facts/Outcome** – Settlement requiring Police policy changes.

# COUNT VI: DELIBERATE NEGLIGENCE AND INDIFFERENCE TO SERIOUS INJURIES OR MEDICAL NEEDS (14TH Amendment, § 1983)

14. At all times each Defendant (The City) (CPD) Officers owes Plaintiff Demetrius Williams the duty to act with reasonable care and not be deprived life or protection.

15. The Due Process Clause requires that officials not be deliberately indifferent to the serious medical needs of person in their custody.

16. Plaintiff Demetrius Williams has obvious injuries requiring medical attention. The City's employees, were aware of this serious need, They **consciously disregarded** a substantial risk of serious harm by denying or delaying treatment demonstrating **deliberate indifference**.

17. The Police Officers intentionally used excessive force even after the Plaintiff made them aware of a serious medical procedure that was performed on his back. The Police Officers ignored the Plaintiff's communication concerning his back issues which caused him to need assistance from the EMT's that arrived on the scene. During the EMT's assessment, the Plaintiff was dropped on the floor of the emergency vehicle

twice causing more damage and pain along with additional visits to the Northwestern Hospital Spine Specialty Clinic.

   a. **Case Name** – Denver Protesters (ACLU Case)
   **Allegations** – 12 Plaintiffs sue over police use of force during 2020 George Floyd protests
   **Key Facts/Outcome** – $14 million jury verdict. Jury found constitutional violations and municipal liability with failure to train.

   b. **Case Name** – 2020 California (Los Angeles) Settlement
   **Allegations** – Teens shot at and detained by officer who mistook an Airsoft gun for a real weapon. (Excessive force/false imprisonment)
   **Key Facts/Outcome** – $985,000 settlement paid by the City of Los Angeles before trail.

   c. **Case Name** – 2020 Kentucky (Estate) Verdict
   **Allegations** – Man killed by a constable in a convenience store. Amendment violations (excessive force, false imprisonment).
   **Key Facts/Outcome** – $304,819 verdict after jury trial on damages.

## COUNT VII: UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT RIGHTS (8TH/14TH Amendment, § 1983)

18. Humane Conditions: Prison officials are required to provide humane conditions of confinement, which includes ensuring that inmates receive adequate food, clothing, shelter, and medical care.

19. Incarceration in **nasty jail conditions** that involve filth, a lack of sanitation, and overcrowding violates contemporary standards of decency and constitutes punishment without due process for a pre-trail detainee.

20. The Plaintiff was placed in an unclean cell for four to five hours where there was human waste on the floor and included an awful smell. The filth was so bad that it prevented a White Shirt Officer from taking necessary photos of the Plaintiff injuries.

   a. **Case Name** – Williams v. O'Gorman (New York, 2024)
   **Allegations** – Unconstitutional Conditions: The Plaintiff alleged for nine years of solitary confinement he was held in a filthy cell the size of a

parking space for 23 hours a day. There was damage to the mattress and he was denied cleaning supplies and inadequate food.

**Key Facts/Outcome** – A jury found the practice violated the Eighth Amendment, awarding punitive damages. The case is considered a landmark verdict and a first to find solitary confinement cruel and unusual. The case settled for $100,000.

b. **Case Name** – Class Action Settlement in Suffolk County, New York (2025)

**Allegations** – Unconstitutional Conditions: Filthy jail cells with exposure to human waste, mold, rust, vermin, freezing temperatures, and inadequate drinking water.

**Key Facts/Outcome** – A 14 year class-action lawsuit that ended in a $2 million settlement

# COUNT VIII: MUNICIPAL LIABILITY – MONELL CLAIM (Policy, Custom, Failure to Train/Supervise) (§ 1983)

21. A municipality is liable under **§ 1983** when its official policy or widespread custom causes a constitutional violation.

22. The City of Chicago is liable because the violations suffered by Plaintiff were directly caused by:

1. **Failure to Train:** The City's **lack of training** on de-escalation, proper use of force, constitutional stops, and impartial policing.

2. **Failure to Supervise and Discipline:** The City's **failure to supervise** officers and its **systematic procedures of negligence** in investigating misconduct, which emboldens officers.

3. **Code of Silence:** A widespread custom among officers to cover up misconduct, including by lying in reports.

4. **Deliberate indifference:** The City was on notice of these systemic problems through decades of litigation, DOJ reports, and countless settlements, yet consciously chose not to act.

a. **Case Name** – Gonzalez v. Trevino (2024)

**Allegations** – Retaliatory Arrest and Probable Cause

**Key Facts/Outcome** - Makes it easier to sue for a retaliatory arrest by clarifying the evidence needed to prove an arrest was due to protected speech, not just probable cause.

b. **Case Name** – Chiaverini v, City of Napoleon (2024)
   **Allegations** – Malicious Prosecution
   **Key Facts/Outcome** – Helps in malicious prosecution cases by requiring each criminal charge to be assessed individually for probable cause.

## COUNT IX: BREACH OF CONTRACT / VIOLATION OF ILLINOIS FOIA

23. The Illinois Freedom of Information Act (5ILCS 140/) creates a statutory duty for public bodies to provide requested records within a specified timeframe (5 business day, extendable by another 5).

24. The City's policy on body-worn camera footage and its obligations under FOIA constitute a legally enforceable duty. By **refusing to release the footage within the statutory 5 to 10 business days**, the City has **breached its contract** with the public and violated Plaintiff's statutory rights, hindering their ability to prove the case.

25. Plaintiff re-alleges all preceding paragraphs.

26. **Equitable Estoppel** is a judicial doctrine that prevents a party from taking a legal position that contradicts a previous position if it would harm another who relied on it. This was a breach of internal rules, duties or informal "code" (a form of bad faith breach) leads to the fraudulent concealment of misconduct. This concealment is then used to **equitably toll the statue of limitations for standard civil rights claims** (excessive force, false arrest, malicious prosecution). As a result the Plaintiff Demetrius Williams should be allowed to pursue a civil rights case against Defendant (the City) (CPD), because the clock was legally paused due to the Defendants' own bad acts (the breach/cover up), allowing an otherwise time-barred suit to move forward and succeed on its merits.

27.  The City, through its public statements and policies, represents that it is transparent and that body camera footage will be available to ensure accountability. Plaintiff relied on this legal claim, The City should now be **estopped** from using its own failure to produce the footage (or any other procedural defense like a statute of limitations that their misconduct cause Plaintiff to miss) as a weapon against Plaintiff's claim.

## PRAYER FOR RELIEF

**WHEREFORE, P**laintiff Demetrius Williams respectfully requests that this Court:

**a.** Award compensatory damages against all Defendants (The City), jointly and severally, in an amount to be determined at trial;

**b.** Award punitive damages against the individual Defendant (CPD) Officers;

**c.** Issue declaratory judgments that the Defendant's (The City) (CPD) policies and practices are unconstitutional;

**d.** Issue a permanent injunction ordering the City to reform its training, supervision, disciplinary, and transparency policies;

**e.** Award attorneys'' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988; and

**f.** Grant any other relief the Court deems just and proper.

**RESPECTFULLY PREPARED**

**BY DEMETRIUS WILLIAMS**

**12/31/2025**